**Electronically Filed**
**Supreme Court**
**SCAP-24-0000461**
**02-JUL-2026**
**10:11 AM**
**Dkt. 44 OP**

IN THE SUPREME COURT OF THE STATE OF HAWAIʻI

---o0o---

_____

STATE OF HAWAIʻI,
Plaintiff-Appellee,

vs.

JOSHUA NAHULU; ERIK SMITH; JAKE RYAN BARTHOLOME;
and ROBERT GUS LEWIS III,
Defendants-Appellants.

_____

SCAP-24-0000461

APPEAL FROM THE CIRCUIT COURT OF THE FIRST CIRCUIT
(CASE NO. 1CPC-23-0000318)

July 2, 2026

McKENNA, EDDINS, AND GINOZA, JJ.,
CIRCUIT JUDGE CATALDO, IN PLACE OF DEVENS, C.J., RECUSED, AND
CIRCUIT JUDGE COSTA, ASSIGNED BY REASON OF VACANCY

OPINION OF THE COURT BY McKENNA, J.

## I.    Introduction

This case arises out of a September 12, 2021 police chase
of a white Honda in Makaha.  Then Honolulu Police Department
("HPD") officer Joshua Nahulu ("Nahulu") allegedly drove the
lead police pursuit vehicle.  Vehicles driven by co-defendants

and HPD officers Erik Smith, Jake Ryan Bartolome, and Robert Gus Lewis III apparently followed.  The Honda's young occupants hit a curb and rolled over, were ejected, and suffered serious injuries.  The police officers allegedly left the scene, returned later, and pretended to not know what had happened.  Nahulu's vehicle was reportedly closest to the Honda before its collision and it is alleged that none of the pursuing police officers stopped to render aid.

Nahulu was charged under Hawaiʻi Revised Statutes ("HRS") § 291C-12(a) (2020 & Supp. 2021) ("fled scene statute"), which provides:

> The driver of any vehicle <u>involved in a collision</u> resulting in serious bodily injury to or death of any person shall immediately stop the vehicle at the scene of the collision or as close thereto as possible but shall then forthwith return to and in every event shall remain at the scene of the collision until the driver has fulfilled the requirements of section 291C-14.  Every stop shall be made without obstructing traffic more than is necessary.

(emphasis added).[1]  Co-defendants were charged with hindering prosecution and conspiring to hinder prosecution.

---

[1]     HRS § 291C-14 (2020 & Supp. 2021), "Duty to give information and render aid," provides:

> (a) The driver of any vehicle involved in a collision resulting in injury to or death of any person or damage to any vehicle or other property that is driven or attended by any person shall give the driver's name, address, and the registration number of the vehicle the driver is driving, and shall upon request and if available exhibit the driver's license or permit to drive to any person injured in the collision or to the driver or occupant of or person attending any vehicle or other property damaged in the collision and shall

(continued . . .)

The Circuit Court of the First Circuit ("circuit court")[2] denied defendants' motions to dismiss, concluding that "involved in a collision" is not unconstitutionally vague and that the defendants were provided with adequate notice of the charges against them.  On appeal, Nahulu contends (1) the fled scene statute is unconstitutional because the term "involved in a collision" is vague; and (2) the criminal charge violated his constitutional due process right to be informed of the nature and cause of the accusation against him, by failing to define "involved in a collision."  His co-defendants join his appeal.

_____

(. . . continued)

> give the information and upon request exhibit the license or permit to any police officer at the scene of the collision or who is investigating the collision and shall render to any person injured in the collision reasonable assistance, including the carrying, or the making of arrangements for the carrying, of the person to a physician, surgeon, or hospital for medical or surgical treatment if it is apparent that treatment is necessary, or if the carrying is requested by the injured person; provided that if the vehicle involved in the collision is a bicycle, the driver of the bicycle need not exhibit a license or permit to drive.

> (b) In the event that none of the persons specified is in condition to receive the information to which they otherwise would be entitled under subsection (a), and no police officer is present, the driver of any vehicle involved in the collision after fulfilling all other requirements of section 291C-12, 291C-12.5, or 291C-12.6, and subsection (a), insofar as possible on the driver's part to be performed, shall forthwith report the collision to the nearest police officer and submit thereto the information specified in subsection (a).

[2]    The Honorable Paul B.K. Wong presided.

On the first issue, we hold that Nahulu cannot raise a facial challenge to HRS § 291C-12(a) and can only challenge the statute on the grounds it is vague as applied to his specific conduct. We further hold that "involved in a collision" under HRS § 291C-12(a) is not unconstitutionally vague as applied to Nahulu's conduct.

On the second issue, we hold that through the bill of particulars, the State informed the defendants of the nature and cause of the accusations against them.

Hence, we affirm the circuit court's denial of Nahulu's motions to dismiss.

## II.  Background

### A.  Factual background

On September 12, 2021 at approximately 3:31 AM, Nahulu and co-defendants were dispatched to Maili Beach Park on Farrington Highway for a loud noise complaint and to break up a party. While at Maili Beach Park, defendants observed a white Honda drive through the parking lot and exit onto Farrington Highway.

Nahulu and co-defendants followed the Honda. Witness accounts conflicted on whether there were flashing lights or sirens during the pursuit.

At approximately 3:46 AM, the Honda was involved in a collision that occurred along Farrington Highway, west of Orange Street, in Makaha. The subsequent investigation determined:

> [T]he Honda traveled west along Farrington Highway and skidded off the roadway, striking the north side curb. The Honda continued to skid, and temporarily went airborne over a shallow ditch. The Honda continued to roll and/or tumble, about 83 feet, through the field, into a chain-link-type fence, through the front yard of [an address on] Farrington Highway, across a paved driveway, and over a short portion of a tile wall into the front yard of [another address on] Farrington Highway.

Nahulu's vehicle was allegedly nearest to the Honda at the time of the collision. Neither he nor co-defendants stopped to render aid. Multiple eyewitnesses reported seeing Nahulu's vehicle bumping into the Honda. But an HPD accident reconstruction expert did not find any evidence of damage or paint transfer showing that Nahulu's vehicle made impact.

The Honda's occupants were ejected, leading them to suffer serious injuries. The driver was in a vegetative state for weeks, but survived, and one of the passengers, then a fourteen-year-old boy, became paralyzed from the waist down.

After the collision, witnesses reported that the police vehicles continued driving, never stopped to render aid, and returned only after other emergency vehicles had arrived at the scene. Nahulu did not file a police report on the collision and none of the co-defendants mentioned their own involvement in their police reports.

## B. Circuit court proceedings

On March 16, 2023, Nahulu was charged with being "involved in a collision" resulting in serious bodily injury and failing to stop and render aid in violation of HRS § 291C-12(a).

5

Nahulu's fled scene charge stated in relevant part:

> On or about September 12, 2021, in the City and County of Honolulu, State of Hawai'i, JOSHUA NAHULU, as the driver of a vehicle involved in a collision resulting in serious bodily injury, to wit, a protracted loss or impairment of the function of any bodily member or organ to Jonaven Perkins-Sinapati, in the form of a traumatic brain injury, with intent, knowledge, or reckless disregard of the substantial and unjustifiable risk that he was such a driver, did intentionally, knowingly, or recklessly fail to immediately stop the vehicle at the scene of the collision or as close thereto as possible, and did intentionally, knowingly, or recklessly fail to forthwith return to and in every event remain at the scene of the collision and fulfill the requirements of Section 291C-14(a) of the Hawai'i Revised Statutes and/or Section 291C-14(b) of the Hawai'i Revised Statutes, and the failure did not result from JOSHUA NAHULU avoiding any unnecessary obstruction of traffic, thereby committing the offense of Collisions Involving Death or Serious Bodily Injury, in violation of Section 291C-12 of the Hawai'i Revised Statutes.

Nahulu's co-defendants were each charged individually with hindering prosecution and collectively with criminal conspiracy to commit hindering prosecution.

On January 22, 2024, Nahulu filed two motions to dismiss, arguing that (1) the fled scene statute is unconstitutionally vague because "involved in a collision" is not defined in such a way that is understandable by a person of ordinary intelligence; and (2) the fled scene charge violated Nahulu's constitutional right to be informed of the nature and cause of the accusation against him because "involved in a collision" was not defined in the felony information. Alternatively, Nahulu requested a bill of particulars specifying the acts upon which the charge was based, and whether the State would be arguing Nahulu made

physical contact with the vehicle. The co-defendants joined Nahulu's motions.

On March 18, 2024, the circuit court conducted a hearing on both motions to dismiss. On April 16, 2024, the circuit court filed orders denying both motions.

In denying the motion to dismiss for unconstitutional vagueness, the circuit court concluded that if "the legislature intended only vehicles that come into contact with other vehicles to be subject to criminal liability under HRS § 291C-12, the statute would be so written" and "the legislative intent is to include more. HRS § 291C-12 covers more than one vehicle merely hitting another object."

With respect to the dismissal motion based on inadequate notice, or, in the alternative, for a bill of particulars, the circuit court noted the conflicting evidence on whether Nahulu's vehicle made physical contact with the Honda before the collision. The circuit court ruled that the charge did not violate Nahulu's constitutional due process right to be informed of the nature and cause of the accusation against him. However, the circuit court granted Nahulu's alternative motion for bill of particulars, in order to help the defense prepare for trial and to prevent surprise due to conflicting statements. The circuit court ordered the State to prepare a bill of particulars

7

specifying what conduct Nahulu engaged in that amounted to being "involved in a collision."

The State then filed the following bill of particulars, clarifying it was not relying on a theory that Nahulu's vehicle came into contact with the Honda:

> To establish the elements of Count 1 of the Felony Information and Non-Felony Complaint filed in Case No. 1CPC-23-0000318, Collisions Involving Death or Serious Bodily Injury, the State does not rely on the theory that, on September 12, 2021, the 2016 Toyota 4Runner, Hawai'i license plate STC 252, driven by Defendant Joshua Nahulu came into contact with the 2000 Honda Civic LX, Hawai'i license plate EG 926, driven by Jonaven Perkins-Sinapati.
>
> The State reserves the right to amend this Bill of Particulars pursuant to Hawai'i Rules of Penal Procedure Rule 7(g).

Defendants appealed the orders denying both motions to dismiss and repeat their arguments below. We granted the State's application for transfer.

### III. Standards of Review

### A. Vagueness challenges

> When confronted with a constitutional challenge of a penal statute on the grounds of vagueness or overbreadth, the following principles apply:
>
>> The constitutionality of a statute is a question of law which is reviewable under the right/wrong standard. Additionally, where it is alleged that the legislature has acted unconstitutionally, this court has consistently held that every enactment of the legislature is presumptively constitutional, and a party challenging the statute has the burden of showing unconstitutionality beyond a reasonable doubt. The infraction should be plain, clear, manifest, and unmistakable.
>>
>> Where possible, a penal statute will be read in such a manner as to preserve its constitutionality.

8

> To accord a constitutional interpretation of a provision of broad or apparent unrestricted scope, courts will strive to focus the scope of the provision to a narrow and more restricted construction.
>
> Provisions of a penal statute will be accorded a limited and reasonable interpretation under this doctrine in order to preserve its overall purpose and to avoid absurd results.

A statute will not be held unconstitutional by reason of uncertainty if any sensible construction embracing the legislative purpose may be given it.

. . . .

This court has recognized that a statute may be found void for vagueness on its face or as applied. See State v. Bates, 84 Hawai'i 211, 222, 933 P.2d 48, 59 (1997) (observing that where a case does not involve any first amendment issues, a defendant has standing to raise a vagueness challenge only insofar as the statute is vague as applied to their specific conduct).

In order for a defendant to succeed on an as-applied challenge, the defendant must demonstrate that the disputed statute is vague with respect to their conduct. However, when a statute burdens a significant constitutional right, such as the freedom of expression, a defendant whose rights are not violated may raise the constitutional rights of others.

State v. Alangcas, 134 Hawai'i 515, 524–25, 531, 345 P.3d 181, 190–91, 197 (2015) (cleaned up).

> In summary, in resolving a challenge to a criminal statute as vague, the challenged statute is analyzed to determine if it (1) is internally inconsistent and incomprehensible to a person of ordinary intelligence, or (2) invites delegation of basic policy matters to police for resolution on an ad hoc and subjective basis. If the statute is determined to be vague, the challenger is then required to demonstrate that "the statute is vague as applied to his or her specific conduct" or demonstrate that the statute burdens a significant constitutional right such as a first amendment right.

Alangcas, 134 Hawai'i at 532, 345 P.3d at 198 (cleaned up).

9

B.    Sufficiency of charging instrument

> When a criminal defendant challenges the sufficiency of a charge in a timely manner, an appellate court will uphold that charge if: (1) it contains the elements of the offense; and (2) it sufficiently apprises the defendant of what the defendant must be prepared to meet.  In other words, the relevant inquiry is whether or not the charge has provided the accused with fair notice of the offense's essential elements.

State v. Kauhane, 145 Hawaiʻi 362, 369-70, 452 P.3d 359, 366-67 (2019) (cleaned up).

## IV.   Discussion

A.    "Involved in a collision" is not unconstitutionally vague

1.    Nahulu can only raise an as applied challenge

Nahulu and his co-defendants contend they are making a facial challenge to the fled scene statute, arguing the statute is unconstitutionally vague because "involved in a collision" is commonly understood by a person of ordinary intelligence to require physical contact by the defendant's vehicle.  In other words, Nahulu argues "involved in a collision" is unconstitutionally vague on the grounds it is not apparent to a person of ordinary intelligence that situations in which there is no physical collision involving the defendant's vehicle itself can be included.

A penal statute is void for vagueness if it does not define a criminal offense with sufficient definiteness so that ordinary people can understand what conduct is prohibited and in a manner that does not encourage arbitrary and discriminatory

10

enforcement. State v. Pacquing, 139 Hawai'i 302, 314, 389 P.3d 897, 909 (2016). But as we reaffirmed in Alangcas, when a case does not involve free speech rights or otherwise reach a substantial amount of constitutionally protected conduct, a defendant does not have standing to raise a facial challenge based on vagueness and can only raise a challenge that the statute is vague as applied to his specific conduct. 134 Hawai'i at 531, 345 P.3d at 197.

HRS § 291C-12 does not implicate free speech rights or otherwise reach a substantial amount of constitutionally protected conduct. The statute is not unconstitutionally vague on its face, as it obviously applies when a defendant's vehicle is "involved in a collision" through physical contact. Therefore, it is not susceptible to a facial challenge.

Although the statute is not facially vague, as recognized by the circuit court, "involved in accident" could be vague when applied to situations other than a vehicle's own involvement in a physical collision. Thus, we must determine whether the statute is vague as applied to Nahulu's alleged conduct. Alangcas, 134 Hawai'i at 529-31, 345 P.3d at 195-97.

### 2. Nahulu's as applied challenge fails

Nahulu's as applied challenge can only be based on an argument that the statute is vague as applied to the specific

conduct alleged against him, which, per the State's bill of particulars, does not include his vehicle striking the Honda.

Granted, we have held that "criminal statutes are subject to a stricter vagueness analysis than civil statutes[.]" Pacquing, 139 Hawaiʻi at 314, 389 P.3d at 909. Under the penal law, the basic canons counsel in favor of a less expansive definition according to the rule of lenity. State v. Bayly, 118 Hawaiʻi 1, 15, 185 P.3d 186, 200 (2008). This longstanding precept of statutory interpretation provides that where a criminal statute is ambiguous, it is to be strictly construed against the government and in favor of the accused. State v. Shimabukuro, 100 Hawaiʻi 324, 327, 60 P.3d 274, 277 (2002).

Although we construe penal statutes narrowly, we also consider them in the light of precedent, legislative history, and common sense. State v. Gaylord, 78 Hawaiʻi 127, 137, 890 P.2d 1167, 1177 (1995). Applying precedent, legislative history, and common sense, we reject Nahulu's as applied challenge.

### a. Legislative history

We address legislative history first. The legislative history clearly indicates the legislature's intent to broaden the duty to stop and render aid to include situations in which a defendant's vehicle does not make physical contact.

Since 1913, Hawai'i has had a fled scene statute.  Revised Laws of Hawai'i § 4391 (1925).  Before 1971, Hawai'i's fled scene statute only required drivers who had actually struck a person or a vehicle to stop and render aid.  See HRS § 291-2 (1968). But, in 1971, Hawai'i adopted the Uniform Vehicle Code ("UVC"), and broadened the duty to stop and render aid to everyone "involved in an accident."  HRS § 291C-12(a) (1971).

The 1967 version of the UVC Annotated discussed the differences between the Hawai'i and UVC fled scene statutes:

> Four laws apparently require stops only by drivers whose vehicles actually collide with other vehicles or persons, while the [UVC] requires such stops by any driver "involved" in an accident even though there is no collision or striking of another vehicle or person.  See the laws of Hawaii, Kentucky, Massachusetts, and Nevada, discussed or quoted, infra.

UVC § 10-102(a) at 25 (1967) (emphasis added).

So, in 1971, as part of its general adoption of the UVC, the Hawai'i legislature adopted the UVC version of the fled scene statute verbatim, which, as indicated, required "stops by any driver 'involved' in an accident even though there is no collision or striking of another vehicle or person":

> The driver of any vehicle involved in an accident resulting in injury to or death of any person shall immediately stop the vehicle at the scene of the accident or as close thereto as possible but shall then forthwith return to an in every event shall remain at the scene of the accident until he has fulfilled the requirements of the section 291C-14.  Every such stop shall be made without obstructing traffic more than is necessary.

HRS § 291-12(a) (1971).

13

The legislative history clearly indicates the legislature intended to conform the Hawai'i Traffic Code with the UVC. The legislature aimed to "provide some uniformity in traffic regulation in the State." H. Stand. Comm. Rep. No. 157, in 1971 House Journal, at 742; S. Stand. Conf. Comm. Rep. No. 685, in 1971 Senate Journal, at 1102. It adopted a statewide code in "conformance with the Federal Highway Safety Program Standard of Codes and Law." Id. Thus, by adopting the UVC fled scene statute verbatim, the legislature adopted a broad duty to stop and render aid, including for drivers who did not actually collide with other vehicles or persons.

In 2021 Haw. Sess. Law Act 125, § 2 at 506, the legislature replaced "accident" with "collision" to (1) recognize that traffic collisions have identifiable and preventable causes; and (2) ensure that a defendant could be charged with both failures to stop and render aid as well as negligent injury or homicide. H. Stand. Comm. Rep. No. 1669, in 2021 House Journal, at 1092. The legislature indicated "that the use of the term 'accident' when referring to a traffic collision or incident is outdated" and that it wanted to bring its terminology in compliance with both the HPD and National Highway Traffic Safety Administration. S. Stand. Comm. Rep. No. 663, in 2021 Senate Journal, at 1114. The bill was signed by the Governor on June 28, 2021 and took

effect immediately, months before the collision in this dispute. Gov. Msg. No. 1226 (June 28, 2021).

Hence, by adopting the 1971 statute based on the UVC, the legislature intended to broaden the duty to stop and render aid to include situations in which a defendant's vehicle does not make physical contact, in contrast with prior Hawaiʻi law. Further, in 2021, the legislature did not intend to change this original intent when it replaced "accident" with "collision."

### b. Precedent

Second, Nahulu's as applied challenge also fails under case law construing fled scene statutes.

In 1994, the Intermediate Court of Appeals ("ICA") ruled in State v. Chen, 77 Haw. 329, 337, 884 P.2d 392, 400 (App. 1994), that for purposes of the fled scene statute, "'[i]nvolved' can be commonly understood to include the status of 'being affected or implicated.'" In Chen, a taxi collided with the defendant's vehicle, which was apparently veering into the taxi's lane near Aloha Tower; the taxi then struck and killed a pedestrian. 77 Hawaiʻi at 333-34, 884 P.2d at 396-97. After stopping for about fifteen seconds, the defendant drove off. 77 Hawaiʻi at 334, 884 P.2d at 397.

Defendant was charged under HRS 291C-12(a), but he argued he was not involved in an accident because he was not the driver of the vehicle that struck the pedestrian. 77 Hawaiʻi at 336,

15

884 P.2d at 399. The ICA disagreed, reasoning that the statutory language is broad. 77 Hawai'i at 337, 884 P.2d at 400. Citing Merriam-Webster's Collegiate Dictionary and other sister state caselaw, the ICA held "involved" can be commonly understood to include the status of "being affected or implicated." 77 Hawai'i at 337, 884 P.2d at 400.

The ICA further indicated the UVC requires drivers to stop and render aid even though the driver does not collide with or strike another vehicle or person, stating:

> HRS § 291C-12(a) is verbatim section 10-102(a) of the [UVC]. Referring to the predecessor statute, HRS § 291-2, and to three other state statutes like it, the [UVC] pointed out that they "require stops only by drivers whose vehicles actually collide with other vehicles or persons, while the [UVC] requires such stops by any driver 'involved' in an accident even though there is no collision or striking of another vehicle or person." [UVC] § 10-102(a) at 25 (1967).
>
> The expansive reach of [UVC] § 10-102(a) and, thus, HRS § 291C-12(a) is evident. The purpose of statutes like HRS § 291C-12(a) which require drivers involved in an accident to stop at the scene of the accident, is "to protect those injured . . . and [to] facilitate a determination of civil and criminal liability." [Wylie v. State, 797 P.2d 651, 657]. See also State v. Liuafi, 1 Haw.App. 625, 643, 623 P.2d 1271, 1282 (1981) ("duty to render aid is clearly intended to furnish accident victims prompt assistance in order to minimize their injuries").

77 Hawai'i at 337, 884 P.2d at 400 (emphasis added).

Because the facts of the case did involve a collision, between Chen's vehicle and the taxi that struck the pedestrian, the ICA declined to "forecast factual situations encompassed within the term 'involved'" where there is no physical contact with another vehicle. 77 Hawai'i at 338, 884 P.2d at 401.

Hence, although the ICA construed the legislative intent of HRS § 291C-12 as expansive, it expressly chose not to address the situation here, in which it is not alleged that defendant's vehicle collided with any other vehicle or person.

However, almost every UVC state that has considered this issue has held that "involved in" does not require physical contact by a defendant's vehicle. Some states, like Hawai'i, have also changed the term from "accident" to "collision."

The legislative replacement of "accident" with "collision" does not make this statute unconstitutionally vague as applied to Nahulu. Merriam-Webster defines collision as "an act or instance of colliding." Merriam-Webster's Collegiate Dictionary (11th ed. 2014). In State v. McClain, 880 S.E.2d 889, 891 (W. Va. 2022), the West Virginia Supreme Court ruled that replacing "accident" with "crash," somewhat analogous to replacing "accident" with "collision," did not make the statute ambiguous, even when there was no crash with defendant's vehicle.

The Florida Supreme Court did hold in Gaulden v. State, 195 So.3d 1123 (Fla. 2016) (per curiam) that its legislature intended to "narrow the [fled scene] statute by replacing accident with crash" and that this change meant "that a vehicle must collide with another vehicle, person, or object." 195 So.3d at 1128. But Gaulden is distinguishable because the

17

Hawai'i legislature, as discussed above, did not intend to do so in our statute by replacing "accident" with "collision."

Based on Hawai'i legislative history, cases from other states interpreting "involved in an accident" can be instructive despite the replacement of "accident" with "collision" in Hawai'i's fled scene statute. Relevant cases not involving physical contact by a defendant's vehicle fall into several different categories including pursuit, racing or drag racing,[3] and evasive action (in which a defendant's action causes another vehicle or pedestrian to avoid the defendant's vehicle, leading to a collision with another object or vehicle).[4] These cases almost uniformly hold that "involved in an accident" does not require physical contact by the defendant's vehicle.

Evans v. Commonwealth, 908 S.E.2d 152 (Va. Ct. App. 2024), which involved a defendant pursuing another vehicle, is one example. There, the defendant was convicted under a fled scene statute after pursuing someone in a domestic dispute and tailing his car for over an hour until the other driver lost control and

---

[3]    See, e.g., State v. Hughes, 907 P.2d 336 (Wash. Ct. App. 1995); People v. Brady, 861 N.E.2d 687 (Ill. App. Ct. 2007); State v. Foster, 559 P.3d 1139 (Ariz. Ct. App. 2024).

[4]    See, e.g., People v. Bammes, 71 Cal. Rptr. 415 (Cal. App. 1968); Clancy v. State, 313 P.3d 226 (Nev. 2013); State v. Sene, 128 A.3d 175 (N.J. Super. Ct. App. Div. 2015); Comstock v. State, 573 A.2d 117 (Md. Ct. Spec. App. 1990); State v. Simpson, 627 A.2d 346 (Vt. 1993); Steen v. State, 640 S.W.2d 912 (Tex. Crim. App. 1982); State v. Perebeynos, 87 P.3d 1216 (Wash. Ct. App. 2004).

crashed into a ditch.  908 S.E.2d at 156.  The Virginia appellate court held that a driver is "involved in an accident" when there is "physical contact between the driver's vehicle and another vehicle, person, or object, or the driver of a motor vehicle is a proximate cause of an accident."  908 S.E.2d at 159 (citing Robinson v. Commonwealth, 645 S.E.2d 470, 474 (Va. 2007)).  The Virginia appellate court upheld the conviction, holding that even if the defendant had not struck the other vehicle, her action was still a proximate cause of the accident. 908 S.E.2d at 159-60.

In addition, no state has held that a fled scene statute is unconstitutionally vague.  See, e.g., Clancy, 313 P.3d at 231 (holding "involved" and "accident" did not require physical impact between two vehicles and "gives fair notice of what is prohibited and does not encourage discriminatory enforcement, thus is not unconstitutionally vague."); Bammes, 71 Cal. Rptr. at 422 (holding the statute was not unconstitutional and stating "[i]t is inconceivable that a driver as a reasonable [person], whose actions contributed to an immediately subsequent accident and who knew of that causal relationship, would conclude otherwise than that [they were] involved in that accident.").

Thus, the vast majority of states hold that the UVC fled scene statute is not unconstitutionally vague and does not require physical contact by defendant's vehicle.

19

### c.    Common sense

Finally, Nahulu's as applied challenge also fails under a common sense standard.  It is common sense that the law requires a driver, especially a police officer, who drives a car in pursuit of another car which crashes, to stop and render aid.

In this case, the issue is whether the statute is vague as applied to Nahulu's alleged conduct — a police officer who engaged in a high-speed pursuit that resulted in the other car's collision.  Examining precedent, legislative history, and common sense, we conclude that the statute is not unconstitutionally vague as applied to Nahulu.

**B.    The charging instrument and bill of particulars together provided sufficient notice of the nature and cause of the accusation**

In his second issue on appeal, Nahulu argues that the felony information's failure to define "involved in a collision" violated his constitutional due process right to be informed of the nature and cause of the accusation against him.  Article I, Section 14 of the Hawai'i Constitution provides in part that "[i]n all criminal prosecutions, the accused shall enjoy the right . . . to be informed of the nature and cause of the accusation[.]"

In general, the sufficiency of the charging instrument is measured by "whether it contains the elements of the offense intended to be charged, and sufficiently apprises the defendant

20

of what [they] must be prepared to meet[.]" State v. Merino, 81 Hawai'i 198, 212, 915 P.2d 672, 686 (1996) (citations omitted). A charging instrument must include all elements of an offense, as a charge without all elements, including attendant circumstance elements, is deficient and cannot be upheld. State v. Wheeler, 121 Hawai'i 383, 394, 219 P.3d 1170, 1180 (2009). But even when the elements are included, a charge must also sufficiently apprise a defendant of what the defendant must be prepared to meet. State v. Kaakimaka, 156 Hawai'i 302, 311, 574 P.3d 767, 776 (2025).

Here, the charging instrument included all elements of the offense. So, the issue is whether the charge still sufficiently apprised Nahulu. In determining whether a defendant has adequate notice, "all of the information supplied to a defendant must be considered in determining whether the defendant's right to be informed of the nature and cause of the accusation was violated[.]" State v. Israel, 78 Hawai'i 66, 72, 890 P.2d 303, 309 (1995) (citations omitted).

So, if the charge left any question about what "involved in a collision" meant, we can only consider the information the State provided before Nahulu objected. See Wheeler, 121 Hawai'i at 396, 219 P.3d at 1183. After the March 16, 2023 charging instrument, Nahulu first objected to the charge through a motion to dismiss filed ten months later, on January 22, 2024. In its

21

February 26, 2024 memorandum in opposition to this motion, the State stated that "[a]s of this writing, the State has provided 1,631 Bates-stamped pages to Defendant Nahulu in e-discovery. Exhibit A." The Exhibit included several batches of documents that were or may have been provided after Nahulu's January 22, 2024 motion. Nahulu did acknowledge that discovery he had received up to the filing of the motion suggested there had been no contact between his vehicle and the Honda.

But we need not decide whether discovery provided before filing of Nahulu's motion gave him adequate notice because if there was an issue regarding sufficient notice, the State's bill of particulars clarified any possible confusion as to the State's theory of how Nahulu was "involved in a collision." There was conflicting evidence regarding whether Nahulu made physical contact with the vehicle. Recognizing this, the circuit court appropriately ordered a bill of particulars to clarify the point. The State's bill of particulars specifies the theory of liability on which it will not rely, i.e., physical contact by defendant's vehicle.

Hence, the bill of particulars clearly provided Nahulu with sufficient information to satisfy Article I, Section 14. The charging instrument stated the elements, including that Nahulu was "involved in a collision." The bill of particulars provided information to Nahulu as to what he was required to defend

22

against, that he was involved in a collision without his vehicle having contacted the Honda.

We therefore affirm the circuit court's denial of the motion to dismiss for lack of notice.[5]

### V.    Conclusion

Based on the reasons above, we affirm the circuit court's April 16, 2024 orders denying Nahulu's and the co-defendants' "Motion to Dismiss Felony Information" and "Motion to Dismiss or, in the Alternative, Motion for Bill of Particulars."

Richard H.S. Sing and           /s/ Sabrina S. McKenna
Doris D. Lum
(Pedric T. Arrisgado and        /s/ Todd W. Eddins
Benjamin R.C. Ignacio
on the briefs)                  /s/ Lisa M. Ginoza
for defendants-appellants
                                /s/ Lisa W. Cataldo
Brian R. Vincent
for plaintiff-appellee          /s/ Brian A. Costa



Ewan C. Rayner
(on the briefs)
for amicus curiae

---

[5]    Although we hold that "involved in a collision" reaches a driver whose vehicle did not make physical contact, the legislature may wish to codify a definition to that effect.  It could provide, for example, that a driver is "involved in a collision" if the driver "was actively involved in the events immediately leading to the collision with that involvement connected to the collision in a logical and substantial manner."